Carr, J.
In the examination of this case, as between Blythe and his vendees, Broclcenbrough and Taylor, I shall put out of view their contract with Rogers, and shall consider it, as if they had continued to hold the lands, and had exhibited the bill in the first suit, and prosecuted it to a decree : I shall so consider the case, in order to simplify it, and because it can do no injustice to Broclcenbrough and Taylor; since their contract with Rogers could no wise vary Blythe's rights; and, as to him, they must be considered as having exhibited the bill that was filed in th.eir names, and as having prosecuted that suit. From the date of Blythe's sale, in September 1813, he took no step to perform his contract in respect of Miss Young's moiety; made no conveyance thereof to the vendees, with warranty; gave no security that her title should be conveyed when she should attain her full age. The subpoena against him was sued out in July 1815. The bill was filed in 1819. It made Blythe's representatives and Miss Young parties defendants: it contained an earnest call for a specific execution of Blythe's contract, as to Miss Young's moiety; and it was only in case Blythe should be unable to execute it specifically, that it asked damages for his breach of contract. Miss Young came of age in 1823, and put in her answer in 1824; in which, while she denied her obligation to do so, she consented to convey her title, upon receiving the purchase money with interest, which by the contract of September 1813, was to be paid to Blythe; and she filed a conveyance in court, to be delivered to the vendees, upon their paying the purchase money with interest. The chancellor’s interlocutory decree in that suit, pronounced in July 1825, was a decree for specific execution.
*637 The principal objection to that decree, was, that interest; , , • t.7 7 / . . . . , . . was thereby given to Blythe (or, which is the same thing in effect, to Miss Young,) from the dates from which the instalments were to bear interest by the contract of September 1813, though Blythe had made no conveyance of Miss Young’s moiety with warranty, nor given security that the title should be conveyed, nor procured Miss Young’s title till 1824, but had in these particulars, broken his contract, to the serious injury of the vendees. It is true that Blythe’s contract binds him to make a deed to the vendees, with general warranty, for Miss Young’s part of the land : but it names no time for doing this. It was well known, that the title was in her, and that she was an infant: it could not be the meaning of the parties, that Blythe should make the deed before he got the title; this was not the security the parties contemplated; that was, to hold the purchase money until the deed should be made, or until Blythe should give sufficient security for a good title, when Miss Young attained her age. The vendees took possession of the property under the contract, and have never been disturbed in it. They say, indeed, that they have suffered damages, by being prevented by the uncertainty of the title, from making the various improvements necessary for a watering place, and reaping the golden harvest, which would have followed: but we have no evidence upon this point; and these speculative damages are the most difficult of all things to be estimated. Perhaps, they might have made thousands; perhaps, they might have sunk every thing. But this is certain, they have had possession of more than 900 acres of land; some of it among the most fertile I have ever seen. The record tells us, this land adjoined the Sweet Springs, a long established watering place; which, we may fairly presume, would furnish a ready market for the products of the soil. Be all this as it may, the vendees have not brought an action for damages: they have filed their bill for a specific execution, praying that the title, if it can possibly be had, may be decreed to them; and it *638 is only in case they cannot get this, that damages are asked for. This suit they prosecute in such a lingering way, as not to bring it to hearing till 1824; waiting (it would seem) till Miss Young (whom, without legal or equitable cla*m uPon her, they had made a party) should come of age. She attained her age in the latter part of 1823, and before the hearing, her answer is filed agreeing to ratify the contract, and tendering a deed, to be delivered, on receiving her purchase money and interest. To this deed there is no exception taken, no reference asked as to title : and the question is, was the chancellor wrong, under these circumstances, to decree interest on the purchase money ? It is most clear, that against Miss Young, he could make no decree, except such as she assented to; and the plaintiffs knowing this, and still making her a party, and praying for her title, must be considered, as consenting to take it, on such terms as she should prescribe. But independently of all this, it is the settled rule, that a vendee, in possession of both land and purchase money, coming for a specific execution, shall pay interest, even though the vendor has been in default, unless he has not only kept the purchase money idle, but has given the vendee notice that it was so. I think the rule a sound one, and applicable to this case. There was no error then in decreeing interest.
But it was objected, that the decree directs the sale of the whole of the land, unless the purchase money should be paid within a given time. This objection would seem to come with a bad grace from vendees, who have insisted on the specific execution of the cpntract. They could only expect to get the title which they have prayed for on paying for it. The purchase money was a lien upon the whole land.
Thus I am of opinion, that, as this case appeared upon the record in the first suit before the chancellor, his decree was right.
But, before the institution of that suit, other circumstances had occurred, other transactions had taken place; *639 and these have been made the subject of the new bill filed by Brockenbrough and Taylor, seeking to suspend the decree in the first suit, and, so far as it affects them, to set it aside. And we are now to consider the case in this new aspect.
In this bill of Brockenbrough and Taylor,—after setting forth their contract with Rogers of May 1815, and the proceedings and decree in the first suit, and alleging that that suit was brought and prosecuted by Rogers, in their names, without their knowledge or consent,—-they charge Rogers with misconduct in several respects : 1. in bringing the suit in their names alone, concealing from the court every trace of his contract with them, his possession of the property, and enjoyment of all its profits, making himself no party, and so stating the case, as to make them appear still the owners and possessors of the property: 2. in making Miss Young a party, against whom they pretended no claim whatever: and 3. in procuring a decree for her title, and putting upon them the burden of paying the purchase money of her moiety with interest, whereas Rogers was the person bound to pay both, and the person against whom the court would have decreed such payment, if he had made himself a party and fairly stated the whole case. Therefore, they prayed, that the decree in the first suit should be set aside, so far as it affected them, and that the execution thereof should be suspended and inhibited by injunction. The injunction was awarded; but the chancellor afterwards dissolved it; and it is from this order of dissolution in this cause, that the appeal was taken to this court. Was the injunction properly dissolved ?
It was said that Blythe’s representatives and Miss Young, who are in pursuit of the money justly due to them, ought not to be delayed by the disputes between the plaintiffs and Rogers. But it must be remembered, that those parties have ample security, and are getting interest on their money. We must remember, too, that “the constant aim of a court of equity, is, to do complete justice, by deciding *640 upon and settling the rights of all persons interested in the subject of the suit to make the performance of the order perfectly safe to those who are compelled to obey it, and to prevent future litigation:” Mitf. Plead. 144. And we may well say with this court, in Lane v. Tidball, Gilm. 133. that, “ compared with these objects, a little delay is deemed of no account, in a court of equity.”
It was said also, that the original decree did not touch Brochenbrough and Taylor, and that therefore the dissolution could not hurt them. I cannot assent to this position : I think the decree does touch them, and very nearly too. The decree, to be sure, does not say, in so many words, that they shall pay the purchase money : but it says, that.upon their paying the purchase money with interest, the title deeds shall be delivered to them, and that, unless they pay it by a certain day, their lands (as the chancellor supposed them) shall be sold. Is not this, in substance, a decree against them for the money? Suppose the marshal sold these lands for half the purchase money due; upon the confirmation of his report, would not an execution issue at once against Brochenbrough and Taylor ? I doubt, whether even an order of the court would be necessary; but if so, it would be an order merely in execution of the decree.
But I place this point upon broader ground: I think Rogers was clearly wrong in bringing this suit in the name of Brochenbrough and Taylor solely, and concealing from the court his purchase of the land, and possession under it. I think this omission has operated injuriously to them; and that they had a right, by such a bill as they have filed, to have it reheard and corrected; and this without waiting till an execution had issued against them. I have already stated that the great object of equity is, to settle the rights of all persons interested, and cut up future litigation. Another ground of rehearing laid down in the books, is, where any facts materially affecting the case have been kept back. Suppose iJog-ershad made hirnself a joint plaintiff with Brochenbrough and Taylor, or made himself plaintiff, and them *641 and the other parties defendants; had stated his own contract, and Ins possession under it; and had prayed a specific execution: what ought to have been the decree of the court? Clearly, I think, that Rogers should pay the 6750 dollars of purchase money due, with interest; that upon such payment, Miss Young’s conveyance should be delivered to him ; that upon his failure to make such payment by a given day, the land should be sold to raise the purchase money; and that, if that did not bring the amount, Rogers and Brockenbrough and Taylor should be personally liable to the vendors. Can it be doubted, that such a decree against Rogers would be correct ? I cannot imagine' the ground of such a doubt. He had bought of Brockenbrough and Taylor, the moiety of the land to which they had the legal right; and as to the other half, he had bought their rights, their contract; and on the terms of paying the same sum, which they were to pay on getting a title : he had enjoyed possession under the contract, and now came into equity for the title.: must he not pay the purchase money with interest? When he was asking the execution of one part of the contract, must he not execute the other part, which he had taken upon himself? This seems to me the clearest equity in the world. All the remarks which I made on this part of the subject, as between Blythe and Brockenbrough and Taylor, apply emphatically to Rogers—because, instead of pursuing Blythe for damages, he has gone out of his way, and out of the power given him by Brockenbrough and Taylor, in making Miss Young a party, and praying for her title; as there was no obligation whatever on her, she had a right to make her own terms; and, surely, Rogers had no right to throw any part of this burden off his own shoulders.
It was objected, that there was not a perfect title to the lands. The answer given was a very satisfactory one; that there was not the slightest objection to the title in the hill, or any of the pleadings; that the parties had not put it in issue, and could not now raise the objection. When *642 Miss Young and the representatives of Blythe filed their or j answers, setting out their titles, and tendering their deeds; if Rogers had doubted on the subject, he might have asked a reference of the title; and before the master, it might have ^een s^ewn» that the defects now imagined, did not exist. the evidence might have been furnished there in a moment, which not being required, may not appear in this record. The chancellor expressly predicates his decree upon the fact, that no exception was taken to the deeds filed. Nay more, Rogers in his answer to Brockenbrough and Taylor’s bill (an answer filed after a full disclosure of the title) makes no objection to the title, nor to any thing else, except the payment of interest on the purchase money. That, in truth, is the only point in difference between him and Brockenbrough and Taylor. Surely, we ought to suffer parties to judge for themselves, and say with what titles they will be satisfied.
I am therefore of opinion, that the order dissolving the injunction was erroneous, and that it ought to be reversed, the injunction reinstated, and the cause remanded, to be proceeded in according to the principles now declared.
Cabell, J.
I am of the same opinion. If we were now deciding this case as on an appeal from the interlocutory decree of July 1825, in the first suit of Brockenbrough and Taylor against Blythe’s representatives and Miss Young; or, in other words, if we are to be intirely uninfluenced by a regard to the contract between Brockenbrough and Taylor and Rogers; it would be perfectly clear, that that decree must be affirmed. For it would be nothing more than the common case of a vendee of land coming into a court of equity for specific execution of the contract; praying a conveyance of the land, on the terms of paying the purchase money. In that aspect of the case, Brockenbrough and Taylor cannot complain: they get the title which they ask, and with which they are satisfied, and they are directed to pay no more than the balance of the purchase money which *643 is confessedly due, with interest from the time indicated by J their contract. And, if we could suppose Brockenbrougli and Taylor to be out of the case, and that in the original suit, Rogers, as the sub-vendee of Brockenbrougli and Taylor, was the nominal plaintiff on the record, as he was the real plaintiff in fact, the decree of July 1825 would be equally free from objection; for he would stand in their shoes, and could object to no decree which would be proper as to them.
Has any thing been exhibited in the injunction case, calculated to shew, that the decree of July 1825 is in any respect wrong, so far as it may affect Rogers ? I think not. It does not appear from his answer to the bill, that he has any objection whatever to the decree, either as to the title of the land, or as to the balance of the principal due from him, for the purchase money. He seems to be perfectly satisfied with the decree, provided he is not made to pay interest on that balance. An exemption from interest, is claimed, on the ground, that the land owed its principal value to its mineral waters, which could not be rendered valuable without expensive improvements; and that these improvements could not be safely made so long as the title was in a state of uncertainty. But this objection seems to be the effect of an after thought. It certainly had no influence with Brockenbrougli and Taylor, during their occupation of the land; for they say, they expended large sums in improvements. Nor does Rogers pretend, that it had any influence with him, between the years 1815 and 1818. He does however say, that after that, he in a measure abandoned the land, in consequence of the uncertainty of the title. If this be so, why did he not communicate the fact to Blythe’s representatives, and file a bill for the rescission of the contract, instead of a bill for specific execution ? If he had then filed a bill for rescinding the contract, there is very little doubt but that Blythe’s representatives would have acceded to his wishes. He must submit to the consequences of his own acts. He made no complaint; he made no offer to rescind the contract; he retained possession of the land, preferred *644 a bill for specific execution of the contract, andabas now ^ got all that he asked by that bill; a title with which' he is satisfied. Under such circumstances, it would be without precedent and contrary to equity, that he should not pay the Pechase money with interest.
But Rogers was not a party on the record in the first suit; and, consequently, the decree, so far as it relates to the payment of the purchase money, does not operate on him, the real plaintiff, but on Brockenhrough and Taylor, the nominal parties. When, therefore, it appeared from the bill in the second suit, that Rogers was the real party in interest, the chancellor ought to have reheard the original suit, so as to make the decree for the purchase money and interest fall exclusively on him; unless, indeed, he should be unable to pay it.
Tucker, P.
I am clearly of opinion, that interest upon the purchase money of Miss Young’s undivided moiety of the estate ought to be paid. To this conclusion I am equally led, in whatever aspect I view the transactions between the parties. . If we look upon her acquiescence in the contract upon the terms of receiving the principal and interest, as of the nature of a new contract, then it is obvious, that she must be entitled to receive that interest, upon which she insists as an indispensable part of the consideration of her conveyance. Whether Blythe ought to be charged with it to the exoneration of the appellants and of Rogers, will best appear by the examination I propose of the conduct and obligations of Blythe. Whether Rogers or the appellants ought to bear the burden, will appear hereafter.
Looking upon Miss Young’s acquiescence in the contract, not as a new contract, but as confirming and carrying the contract of Blythe into execution, how does the case stand ? Taking the .contract of September 1813, as one made by Blythe’s authorized agent (for though Stribling’s authority was questioned, yet all parties have united in waiving that question) what was Blythe’s engagement as to that portion *645 of the estate which belonged to Miss Young? “For her undivided two-fourths,” it is provided “ that Blythe should make to Brockenbrovgh and Taylor a good and sufficient deed with general warranty.55 And for the security of the purchasers, it is also provided, “that nono of the deferred payments” [which, without doubt, was regarded as the price or consideration of her interest] “ shall be demanded, until he shall either make a deed, or give good security that a good title will be made when Miss Young shall come of age.” Here then, the fact that he had not tide to Miss Young’s portion is disclosed; tho fact that she was an infant is avowed, and the means of security for the purchasers is provided. Those means are, either the retention of the purchase money, the execution of a deed with general warranty, or the giving of good security that a good title would be made when Miss Young should come of age. Here are clearly three distinct modes of indemnity, of which Blythe, by the frame of the instrument, clearly had the option. He was not bound by its terms to do which they pleased. He was inlirely at liberty to do which he pleased. If he chose to give security, or to execute a deed with warranty, he would then have been entitled to receive the purchase money: but if he chose to waive the receipt of the purchase money, he was at liberty ío do so, and then it was unnecessary to give the security, or to execute the deed. It could not be a reasonable interpretation of the contract, that he should leave the money in their hands, and give the security also. The money was the best security, and the amount was precisely that which they would have recovered back, had he gone on to receive it. For, having only engaged for the title of a third person, the measure of damages, if he failed to get it in, would bo the purchase money of the land.
Blythe, then, did not break his contract by failing to give security or to execute a deed with warranty. Has he failed to comply with it since ? ! think Until that date. at age in 1833 not. Miss Young arrived ho was not hound ío pro *646 cure her title, though he united in the effort to effect that object by petition tp the legislature. Within a very reasonable time after her maturity, his representatives did procure , . , her acquiescence, and she executed a conveyance accord-‘ngbr- There has been a more than customary punctuality an<^ Prec*s'on in the fulfilment of his engagements, and Rogers, the vendee of the appellants, is now in full enjoyment of the whole title. I say nothing of the minor objections to the obscurity of part of the title, since if Rogers had had any doubt about it, the matter should have been distinctly brought before the court by a reference of the title, or otherwise. The failure to do this, must be taken as a proof of Rogeis’s consciousness, that there was no material difficulty or defect.
In the short view of the transactions which I have taken, it appears, then, that Blythe and his representatives have been in no default. He has procured the title of Miss Young, within a reasonable time. How that title was procured, how her acquiescence was obtained, is matter of no concern to the vendees. He did not represent himself as the owner. He fairly represented a minor as the owner, and engaged for her executing a title when the legal impediment of infancy should be removed. That engagement has been complied with.
Then, how does the question stand as to interest? The record presents the case of a vendor, who has delivered possession of the premises to the purchaser, which he has continued to enjoy without molestation; of a vendor, who has also faithfully complied with his engagement, that a good title should be made upon the happening of a particular event; until which event, he has left the purchase money in the hands of the vendee, as his security; and that vendee has thus, for more than eighteen years, by himself or his vendee, received the rents and profits, and held the purchase money also. Is there any principle of law or equity, which can justify us in saying he shall keep both ? Shall the purchaser for so long a period receive the profits, while *647 he is enjoying the interest of the purchase money?—for it would be wilful blindness to the ordinary course of transactions, to suppose, that this money has lain idle. If raised at all, it has been put to interest beyond question; if not raised, the interest has been saved to the party, which amounts to the same thing: for, in either event, he would have enjoyed the vendor’s estate for eighteen years for nothing. The injustice of such a proceeding has long since given rise to the rule, that, as to interest and profits, the vendor is to be considered the owner of the money and entitled to the interest, while the vendee is regarded as the owner of the land and entitled to the profits. But he cannot have both. The principle is too familiar to require more than a reference to the cases which were cited at the bar. They establish, beyond question, the general rule, that where the purchaser is let into the possession, and the perception of the rents and profits of the purchased estates, he must pay interest for his purchase money; and if the rule be not universal, the party who claims an exemption from its operation, must bring himself within some established exception. This has been attempted, in the argument of the case; but it has moreover been contended that the english rule is too rigorous for our country.
That rents and profits ordinarily bear but a small proportion to the interest of purchase money, cannot be denied. This is very strikingly the case in Virginia. Hence, where there has been a sale and delivery of possession, and the contract has been disaffirmed, there can be no propriety in the application of the rule. Accordingly it never has been so applied. But where a man purchases land, he has made up his mind to give his money, which would produce a good interest, for land, which will produce much less. Thus, in the present case: had the title been made, and the money paid, the purchaser must have been content with the scanty rents, while the seller would have been receiving full interest. Now, since a court of equity looks upon the sale, as complete so soon as the parties have contracted, it is, quoad *648 this matter, the same thing as if a conveyance had been actually made 3 provided the vendee has had actual possession, and uninterrupted enjoyment, and there are no particular circumstances to take the case out of the general rule. •^’rom the moment of the contract, the buyer is the owner ^an(^’ and must rest satisfied with his rents 3 and the seller is the owner of the money, and is entitled to his interest.
But it is said in this case, there were objections to the title which prevented the vendees from proceeding to improve the property, so as to render it profitable. To this there are many answers: 1. The difficulty in the title was one contemplated at the very inception of the transaction, and yet it was not provided that interest should not be paid. 2. If there were objections to the title, Blythe, I have shewn, was in no default. 3. The vendees have always had ample indemnity in their power 3 for they have not only retained the purchase money of the portion of which the title was doubtful, but they have also attached the whole purchase money of the residue, for the purpose of securing themselves. Had the title ultimately failed, they would have had, at this day, the 6750 dollars in Strihling’s hands, with the accumulated interest of eighteen years, to indemnify them for their improvements 5 or, if the whole contract had been rescinded, so that this sum would have become their’s again, then the land would have become Blythe’s, and that would have become liable. I cannot, therefore, but consider this as a pretext on the part of Rogers, who seems to have made no progress in improving 3 and as to Broclcenhrough and Taylor, they were obviously not arrested in their measures, as in less than two years they had laid out 4500 dollars. Upon the whole, I am satisfied, that Blythe’s representatives, or (which amounts to the same thing) Miss Young is entitled to interest as decreed by the chancellor.
We come next to Inquire who must pay it. Shall the burden fall on BrocJcenhrough and Taylor or on Rogers ?
*649 By their contract with Rogers of May 1815, Brockenbrough and Taylor recited thoir contract with Blythe, and thus distinctly announced, that their title was imperfect as to Miss Young’s moiety; with respect to which, it was also provided, that they were to use their best endeavours to procure the legal title, to ho conveyed to Rogers; and if tho legal title could be obtained, Rogers was then to pay them 6750 dollars ; but, if a legal title could not be procured by them within one year from the date of that agreement, Rogers was then to be at liberty, in their name or his own, to institute any legal proceedings against tho said Blythe, for his own benefit and advantage.; it being understood, that in the event of their not procuring the legal title to more than Blythe’s moiety, Rogers was to pay for that moiety only. It was also provided, that, as it might be necessary to attach the money in Stribling’s hands to secure performance of the contract by Blythe, or obtain damages for non-performance thereof, it was agreed, that any proceedings might be had for that object, and that they should be for the benefit of the party entitled thereto, according to the purport and intent of that agreement.
By these articles, then, as I understand them, Brockenbrough and Taylor were bound to use their best endeavours for one year, to procure the legal title of Miss Young’s moiety, to be conveyed to Rogers; and if they succeeded, they were to receive 6750 dollars: if they did not, then they passed over to Rogers their rights as against Blythe, to be pursued by him in their names, if be pleased, but at bis own risque, and for bis own account; and in this event, they were to receive nothing for Miss Young’s moiety. If no title could be procured eventually, Rogers would have been entitled to any damages he could recover in their names, and they would neither have participated in those damages, nor received any equivalent for them. Or, if he proceeded for the title and recovered it, be would recover Jt l' for his own benefit and advantage,” and for his own account! and, of course, upon his own responsibility for *650 the performance of the contract on the part of Brockenbrough and Taylor with Blythe. For it is observable, that although in the event of their procuring the title to be made to him, he was to pay them the 6750 dollars, since they would have to pay it to Blythe ; yet, after the year expired, when he was authorized to sue on the contract for his own benefit and advantage, there is no obligation on him to pay them one cent. He is left to the responsibilities of the contract, which he was authorized to enforce, and charged with its obligations which he was bound to fulfil.
- Such, I think, is the clear interpretation of this contract. In compliance with it, Brochenbrough and Taylor, within the year, issued the attachment against Stribling. I attribute the act to them, because it was their duty to do it by the contract; and the compliance with that duty may be presumed, as the act was a proper one, as the suit is in their names, and there is no testimony going to fix the act on another. They also in further fulfilment of their contract to endeavour to get the legal title for Rogers, made an effort to procure an act of assembly authorizing a sale of Miss Young’s title. This was the only practicable mode of getting that title, within the year; and when they failed in this, and the year had elapsed, their rights and obligations were both at an end. From that moment, Rogers stood in their shoes, with full title to the benefit of their contract with Blythe, and of course bound by all its provisions. He acted accordingly. In 1819, he procured counsel, and instead of instituting a new suit, grafted his bill upon the proceedings already instituted against Blythe and Stribling. From that moment, the suit was his. It stood, indeed, in the names of Brochenbrough and Taylor, but not improperly, as Rogers had a right to use their names. It was for his own benefit and advantage, and under his exclusive management and control. They were not entitled to meddle with it, because they had contracted to permit' him to sue in their names “for his own benefit;” and he, and not they, was the proper judge of what was so. On *651 the other hand, they were not bound to concern themselves with it, because they had passed over their rights to him pro bono clique malo,—for better, for worse: and had excluded theraselves from any right of interference. Whether, therefore, as it respects Blythe’s representatives, this was the suit of Rogers, or of Brockenbrough and Taylor, it was as between those parties, unquestionably the suit of Rogers from the time the bill was fded.
Upon the whole, I am of opinion, that from the expiration of the year after the date of their contract with Rogers, Brockenbrough and Taylor were cut loose from the transaction, except so far as they might have been liable to Blythe. The chancellor, however, has not decreed against them personally, but only against the land; and I think he has rightly considered the contract as intire, and the whole liable for the purchase money yet due with interest..
But although this view of the case would absolve the appellants from any liability except to Blythe’s representatives, in case the whole lands, and Rogers himself, should prove inadequate to the discharge of the purchase money; yet it is by no means a consequence of this opinion, that the chancellor erred in dissolving the injunction, obtained by the appellants to the decree in favor of Blythe’s representatives and Miss Young. This is, in truth, the only question before this court. There is no reason afforded by that bill for longer postponing their recovery of the equivalent for their estates, now for eighteen years in the uninterrupted enjoyment of their vendees, and of the claimant under them. I am clearly of opinion, that the injunction was properly dissolved. Whether the original decree was erroneous or not, we are not entitled to inquire, as it has not been appealed from, and as it is clear, that it was a matter of no concernment to the appellants, if I am right in my view of their rights and responsibilities. That decree, though rendered in a cause in which they were nominal plaintiffs, was not personally against them. It decrees, indeed, a sale of the lands, in the event of the purchase money not being paid *652 by them: for Rogers was unknown in the case. But it d°es not decree, that they shall pay it $ and no execution can be taken out against them. Had it done so, then their bill would have been perfectly proper. At present, it acts, *n e®bct, upon Rogers only, by directing a sale of his land. ^£ *s ProPer 1^3£ i£ should do so, and he must pay the purchase money, or submit to a sale; for the decree is rendered in a cause emphatically his own, and over which the appellants had no control; and while they, on the one hand, are not entitled to appeal from the decree, because it does not affect them, and because they have no right to meddle with the cause which was prosecuted in their names by their own assent, he on the other hand, has acquiesced in the decree, by asking no appeal. Therefore, I am of opinion, that the order dissolving the injunction should be affirmed.
The decree entered by the court, declared, that the interlocutory decree of July 1825 in the first suit, was correct, so far as it decreed the payment of the purchase money to Miss Young, with interest on the instalments thereof from the dates when they were payable, or from which they were to bear interest, by the contract of September 1813, between the appellants and Blythe, and so far also as it subjected the whole of the land to sale, for payment of the purchase money and interest thereon remaining due; and there was no just grounds for a further delay of the sale. That, according to the just construction of the contract of May 1815, between the appellants and Rogers, and considering the possession of the lands taken and held by him,—. Rogers, after the lapse of a year from the date of that contract, and the failure of the appellants to get in Miss Young’s title within the year, was entitled to all their rights under their contract with Blythe, and liable (as between him and them) to all their responsibilities under it, and to all responsibilities that might arise out of any remedy he might select to enforce it. That the suit in which the decree of July 1825 was made, was one that Rogers had a *653 right to proseeute, and did in fact prosecute, for his own benefit; with which suit the appellants did not, and could not, interfere. That Rogers (as between him and the appellants) was liable to all the responsibilities arising out of the first suit so prosecuted, and was bound to exonerate the appellants from them all. That the purchase money and interest due, ought to be sought for, out of the lands, and from Rogers, before resort should be had to the appellants. That the injunction awarded to the appellants in the second suit, ought to be continued, until resort to them should become necessary, so as to protect them from personal responsibility, but no further; it being the opinion of this court, that the decree of July 1825 in the first suit, ought in no other respect to be longer suspended, unless Rogers should, within a reasonable time, to be appointed by the court of chancery, pay the purchase money and interest thereon due; in which case, the court ought to decree, that the appellants shall convey to Rogers the title conveyed to them by Miss Young. But that this decree, while it expressed the clear opinion of the court, as to the construction of the contract between the appellants and Rogers of May 1815, and on the points now in controversy between them, was not intended to preclude Rogers from any defence, of which it might he in his power to avail himself, by adducing new evidence, or in any proper way giving a new aspect to the case. Therefore, the chancellor’s order dissolving the injunction in the second suit, so far as it conflicted with the principles here declared, was reversed, and the cause was remanded &c. And the court decreed the appellants their costs against Rogers.